O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CARLOS JAVIER GUIZAR SERNA,     )     NO. CV 14-3399-MAN
                                )
                  Plaintiff,    )
                                )     MEMORANDUM OPINION
          v.                    )
                                )     AND ORDER
CAROLYN W. COLVIN,              )
Acting Commissioner of Social   )
Security,                       )
                                )
                  Defendant.    )
_____ )

On May 2, 2014, plaintiff filed a Complaint seeking review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). (ECF No. 2.) On May 22, 2014, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 9.) On January 5, 2015, the parties filed a Joint Stipulation ("Joint Stip."), in which plaintiff seeks an order reversing the Commissioner's decision and directing the immediate payment of benefits or, in the alternative, remanding the matter for further proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (Joint Stip. at 48-50.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On December 17, 2009, plaintiff protectively filed his application for a period of disability, DIB and SSI.  (Administrative Record ("A.R.") 20.)  Plaintiff, who was born on July 16, 1966[1] (*id.* 136), claims to have been disabled since December 1, 2009,[2] due to lower back pain (*id.* 140).  Plaintiff has past relevant work experience as an agricultural field worker, mechanic, and tractor driver.  (*Id.* 28.)

After the Commissioner denied plaintiff's claim initially (A.R. 20, 67-70) and on reconsideration (*id.* 20, 72-76), plaintiff requested a hearing (*id.* 20, 77-78).  On December 7, 2011, plaintiff, who was represented by counsel, appeared and testified at a video hearing, with the help of a Spanish language interpreter, before Administrative Law Judge Dale A. Garwal (the "ALJ").  (*Id.* 20, 39-62.)  Vocational expert ("VE") Kelly Bartlett and plaintiff's friend Loretta Solana also testified.  (*Id.*)  On January 23, 2012, the ALJ denied plaintiff's claim (*id.* 20-29), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (*id.* 1-6).

On February 19, 2013, plaintiff sought review in this Court (A.R. 477-79), which remanded the case for further proceedings pursuant to the parties' August 9, 2013 Stipulation to Voluntary Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g) and to Entry of Judgment.  (*Id.* 403, 471-72.)  Following the Court's issuance of the Remand Order and Judgment, the Appeals Council vacated the ALJ's decision and remanded the case for further administrative proceedings.[3]  (*Id.*

---

[1]  Plaintiff was 43 years old on the alleged disability onset date, thereby qualifying as a younger individual under the Commissioner's regulations.  (*See* 20 C.F.R. §§ 404.1563, 416.963.)

[2]  Prior to the first hearing, plaintiff alleged that he had been disabled since November 22, 2007.  (A.R. 136.)

[3]  The Appeals Council vacated the ALJ's decision because there was new evidence indicating a deterioration in plaintiff's lumbar spine condition and a reduction in the RFC assessment.  (A.R. 485-86.)  Thus, on remand, the Appeals Council required the ALJ to:  (1) update the treatment records regarding plaintiff's medical condition; (2) articulate how he evaluated plaintiff's subjective complaints and "further evaluate the statements from [plaintiff] and

1    403, 485-87.)

2

3        On December 19, 2013, plaintiff, who was represented by counsel, again appeared and

4    testified, with the help of a Spanish language interpreter, at a video hearing before the ALJ. (A.R.

5    432-40.)  VE Sharon Spaventa also testified. (*Id.*)  On January 16, 2014, the ALJ denied plaintiff's

6    claim. (*Id.* 403-13.)  That decision is now at issue in this action.

7

8                          **SUMMARY OF ADMINISTRATIVE DECISION**

9

10       In his decision,[4] the ALJ found that plaintiff met the insured status requirements of the

11   Social Security Act through December 31, 2013, and that plaintiff has not engaged in substantial

12   gainful activity since November 29, 2007, the alleged onset date. (A.R. 406.)  The ALJ determined

13   that plaintiff has the following severe impairments:  back pain, status post L5-S1 laminectomy

14   (June 2008); status post right shoulder surgery (1997); status post left knee surgery; and

15   depression. (*Id.*)  The ALJ concluded that plaintiff does not have an impairment or combination

16   of impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404,

17   subpart P, appendix 1. (*Id.*)

18

19       After reviewing the record, the ALJ determined that plaintiff has the residual functional

20   capacity ("RFC") to perform light work. (A.R. 407.)  Specifically, plaintiff can "lift/carry 20 pounds

21   occasionally and 10 pounds frequently[,] sit/stand six hours in an eight-hour workday[, and]

22   occasional[ly] bend or stoop" but "[must] avoid working in cold temperature extremes" and is

23   "limited to simple, routine tasks." (*Id.*)

24

25   third parties"; (3) further evaluate medical source opinions and explain the reasons for the weight
26   he gives them; (4) reassess plaintiff's RFC on the updated record; (5) assess whether plaintiff has
27   past relevant work he can perform, transferrable skills, and the ability to communicate in English;
     and (6) secure supplemental evidence from a VE if necessary. (*Id.* 486-87.)

28          [4] The current ALJ decision incorporates the medical evidence and findings from the previous
     decision. (A.R. 403.)

                                           3

The ALJ further found that plaintiff "is unable to communicate in English" and "[t]ransferability of job skills is not material to the determination of disability because using the Medical–Vocational Rules as a framework supports a finding that [plaintiff] is 'not disabled,' whether or not [plaintiff] has transferable job skills." (A.R. 411.)

Having considered plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff could perform, including those of housekeeper hotel/motel and laundry worker. (*Id.* 412.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from December 1, 2009, through the date of his decision. (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for

1  determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."
2  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).
3
4        The Court will uphold the Commissioner's decision when the evidence is susceptible to
5  more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).
6  However, the Court may review only the reasons stated by the ALJ in his decision "and may not
7  affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d at 630; see also Connett
8  v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  The Court will not reverse the Commissioner's
9  decision if it is based on harmless error, which exists only when it is "clear from the record that
10  an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  Robbins v. Soc.
11  Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r of Soc. Sec., 454 F.3d
12  1050, 1055 (9th Cir. 2006)); see also Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th
13  Cir. 2008).
14
15                                    **DISCUSSION**
16
17         Plaintiff claims that the ALJ erred in failing:  (1) to properly consider the medical evidence
18  regarding his physical and mental impairments and limitations (claims one and two); (2) to
19  address the specific directives of the Appeals Councils (claim three); (3) to properly consider his
20  subjective complaints (claim four); and (3) to properly assess his RFC (claim five).  (Joint Stip. at
21  10.)
22
23  **I.    The ALJ Failed To Properly Assess Plaintiff's Physical and Mental RFC.**
24
25         An ALJ is obligated to take into account all medical opinions of record, resolve conflicts in
26  medical testimony, and analyze evidence.  20 C.F.R. §§ 404.1527(c), 416.927(c); Magallanes v.
27  Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  The opinion of a treating or examining physician is
28  entitled to greater weight than that of a non-examining physician.  Garrison v. Colvin, 759 F.3d

                                         5

995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)); *see also* 20 C.F.R. § 416.927(c).   When an examining physician's opinion is not contradicted by the opinion of another physician, it may be rejected only for "clear and convincing" reasons.  Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When an examining physician's opinion is contradicted by the opinion of another doctor, the ALJ can reject the examining physician's opinion only if he articulates "specific and legitimate" reasons supported by substantial evidence in the record. Ghanim, 763 F.3d at 1161; Garrison, 759 F.3d at 1012; *see also* Ryan, 528 F.3d at 1198.

### A.   The ALJ Failed To Properly Assess Plaintiff's Physical RFC.

In determining plaintiff's physical RFC, the ALJ rejected the opinions of plaintiff's treating orthopedic surgeon, Richard Scheinberg, M.D., and the examining orthopedic surgeon, Steven Nagelberg, M.D., in favor of the opinions of the other examining orthopedic surgeon, Dale Van Dirk, M.D., and the state agency medical consultants, Dr. M. Nawar, an oncologist, and Dr. A. Khong, an opthamologist.  (A.R. 410; *see also* A.R. 241 (identifying Dr. Nawar's medical specialty code as 27, indicating oncology); *id.* 243 (identifying Dr. Khong's medical specialty code as 28, indicating ophthalmology).)

### 1.   The ALJ Failed To Properly Consider The Opinion Of Dr. Nagelberg, An Examining Orthopedic Surgeon.

On May 30, 2012, workers' compensation consultative examiner Steven Nagelberg, M.D., completed an "Agreed Medical Evaluation and Permanent and Stationary Report" in connection with plaintiff's 2007 work injury.  (A.R. 349-81.)  Dr. Nagelberg conducted an extensive review of plaintiff's medical records dating from 1996 to 2011, took a history from plaintiff, and reviewed outside diagnostic studies.  (*Id.* 352-76.)   At Dr. Nagelberg's request, plaintiff also underwent additional diagnostic studies, including an electromyography ("EMG")/nerve conduction study

("NCS") of plaintiff's lower extremities and an MRI of his lumbar spine.  (*Id.* 378.)

Upon physical examination of plaintiff's lumbar spine, Dr. Nagelberg noted that plaintiff can flex to 30 degrees and extend to five degrees, which were both painful. (A.R. 376.)  Further, "[n]eurological examination of the lower extremities shows motor examination intact in all muscle groups" and plaintiff's sensation was intact to a pinprick and light touch.  (*Id.*)  Finally, plaintiff's straight leg test was "limited at 45 degrees for low back pain."  (*Id.*)  Dr. Nagelberg described the "subjective factors" and "objective factors" underpinning his assessment of plaintiff's work restrictions.  (*Id.* 379.)  The "subjective factors" were "constant slight pain, becoming slight to moderate with lifting more than 15 lbs., repetitive bending, prolonged sitting, standing, and walking."  (*Id.*)  The objective factors were:  posterior lumbar tenderness; limitation to lumbar spine motion; history of lumbar microdiscectomy; EMG/NCS of the lower extremities showing multilevel radiculopathy; and MRI findings of retrolisthesis at L4 and L5, mild to moderate neural foraminal encroachment on the right, a 3-4 mm diffuse disc protrusion at L5-S1, and a right-sided laminectomy defect."  (*Id.*)  Dr. Nagelberg diagnosed plaintiff with a:  "[h]istory of L5-S1 microdiscectomy"; "[p]ossible lumbar radiculopathy"; and "psychological diagnosis."  (*Id.* 377.) He opined that plaintiff's "current work restrictions for the lumbar spine preclude lifting more than 15 lbs., repetitive bending, and prolonged sitting, standing, and walking."  (*Id.*)  He also opined that plaintiff "reached a point of maximum medical improvement" and plaintiff's "total whole person impairment . . . can be determined to be 13%."  (*Id.* 380.)

The ALJ gave "little to no weight" to Dr. Nagelberg's functional assessments, because (1) Dr. Nagleberg's opinion is based "primarily on the subjective statements of [plaintiff]" and (2) his diagnosis of lumbar radiculopathy is inconsistent with his own performed objective testing. (A.R. 410.)  These are not specific and legitimate reasons supported by substantial evidence for according little weight to the opinion of plaintiff's treating physician.

First, contrary to plaintiff's claims, Dr. Nagelberg did not rely exclusively on plaintiff's

7

1   subjective symptoms to support his findings, diagnosis, and functional assessment.  As noted

2   above, Dr. Nagelberg also considered his physical examination of plaintiff, several diagnostic

3   studies, and medical records in assessing plaintiff's work restrictions.  Therefore, the ALJ's

4   conclusion that Dr. Nagelberg's opinion is based primarily on plaintiff's subjective statements is

5   not based on substantial evidence and does not provide a legitimate reason to reject his opinion.

6   *See generally* Ryan, 528 F.3d at 1199–1200 (noting that a physician's opinion should not be

7   discredited solely on the basis of an ALJ's determination that the plaintiff's subjective complaints

8   were not credible).

9

10      The ALJ's second reason for rejecting Dr. Nagelberg's opinion is also flawed.  The ALJ

11   rejected the opinion of Dr. Nagelberg, because Dr. Nagelberg "diagnosed [plaintiff] with multiple

12   findings, but also performed objective testing that showed the opposite finding."  (A.R. 410.)  In

13   support, the ALJ cites Dr. Nagelberg's diagnosis of "lumbar radiculopathy, but objective testing

14   was unremarkable in that regard."  (*Id.*)  The results of plaintiff's EMG/NCS of his lower

15   extremities are ambiguous.  As the ALJ points out, Dr. Nagelberg describes the findings of

16   plaintiff's EMG/NCS of his lower extremities as unremarkable.  (*Id.* 378, 409.)  However, Dr.

17   Nagelberg also notes in two other sections of his report that the findings of the EMG/NCS show

18   that radiculopathy was present in plaintiff's lower extremities.  (*Id.* 379-80.)  Specifically, in the

19   "Objective Findings" section, it is noted that the EMG/NCS shows "multilevel radiculopathy" and

20   in the "Impairment Determination" section, it is noted that "evidence of radiculopathy [was]

21   present on his electrodiagnostic studies."  (*Id.*)  Thus, Dr. Nagelberg's recorded findings of the

22   EMG/NCS of plaintiff's lower extremities is unclear, and in the light of the ambiguity, this is not

23   a legitimate reason to reject Dr. Nagelberg's opinion.[5]

24

25

26      [5] "When there is ambiguous evidence or when the record is inadequate to allow for proper
27   evaluation of the evidence" in a disability benefits case, the ALJ has an independent "'duty to fully
    and fairly develop the record and to assure that the claimant's interests are considered.'"  Mayes
28   v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150
    (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).

In sum, the ALJ did not properly evaluate Dr. Nagelberg's opinion and must revisit this opinion on remand.

### 2.   The ALJ Erred By Failing To Properly Evaluate The Opinion Of Dr. Scheinberg, Plaintiff's Treating Physician.

Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. Richard Scheinberg who treated plaintiff in connection with plaintiff's worker's compensation claim.  Plaintiff argues that the ALJ ignored Dr. Scheinberg's "longitudinal treatment history and fail[e]d to indicate what weight, if any, is given to the opinion of a board certified specialist in orthopedic medicine who performed surgery and continued to treat plaintiff for the next five (5) years." (Joint Stip. at 13.)

Dr. Scheinberg began treating plaintiff in 2008 and appears to have provided plaintiff treatment for his lower back pain through 2013. (A.R. 180-229, 333-43, 337-378, 523-24, 526-27.)  Although the ALJ expressly considered Dr. Scheinberg's opinion by summarizing Dr. Scheinberg's medical notes and findings in his decision, the ALJ did not indicate what weight if any was given to Dr. Scheinberg's opinion.  (*Id.* 25-26, 409.)  The Commissioner argues that the ALJ was under no duty to discuss Dr. Scheinberg's opinion, because it did not constitute an "'opinion' as that term of art is used within the context of Social Security law," but rather reflected only observations. (Joint Stip. at 20.)  In other words, Dr. Scheinberg did not assess any specific work limitations.

At first glance, it indeed appears that Dr. Scheinberg did not render an opinion regarding plaintiff's functional limitations.  However, several of Dr. Scheinberg's treatment notes from the period between July 2010 to February 2011 were excluded from the record. (*See* A.R. 313-17, 356-75 - missing treatment notes include 7/8/2010, 8/9/2010, 9/30/2010, 10/29/2010, 12/3/2010, 1/7/2011, and 2/11/2011.)  Significantly, on August 9, 2010, Dr. Scheinberg opined that plaintiff would not be able to do any "significant lifting, bending, stooping, twisting, prolonged

9

sitting, standing or walking." (A.R. 368.) These limitations are inconsistent with the ALJ's RFC determination. Accordingly, the ALJ must develop the record further in order to properly evaluate the opinion of Dr. Scheinberg, who, as one of plaintiff's treating physicians, is uniquely qualified to opine on plaintiff's impairments and limitations. On remand, the ALJ should (1) recontact Dr. Scheinberg to obtain either the missing treatment records referred to in the record or an updated opinion from Dr. Scheinberg concerning plaintiff's RFC and (2) reassess Dr. Scheinberg's opinion in the light of the additional evidence and in accordance with the applicable legal standards.

### 3. The ALJ Failed To Properly Consider The Opinion Of Dr. Van Kirk, An Examining Orthopedic Surgeon.

On March 27, 2010, Dr. Dale Van Kirk conducted a comprehensive orthopedic evaluation of plaintiff. (A.R. 230-33.) After physically examining plaintiff, Dr. Van Kirk diagnosed plaintiff with "[s]tatus post lumbar decompressive surgery with residual low back pain with radiation down the legs." (*Id.* 233.) Dr. Van Kirk opined that plaintiff: could stand or walk for six hours in an eight-hour day "if he can sit down and rest every 45 minutes for about 5 or 10 minutes should his back pain become progressive"; could sit for six hours in an eight-hour day "if he can get up and move around every 45 minutes for about five minutes to reposition himself should his back pain become progressive"; can lift and carry 20 pounds occasionally and ten pounds frequently; is "limited to no postural activities including bending, stooping, crouching, crawling, kneeling, balancing, pushing, or pulling because of significant low back pain"; and would have no manipulative limitations but should not be required to work in a cold and/or damp environment. (*Id.*)

The ALJ purportedly relied on Dr. Van Kirk's opinion in determining plaintiff's physical RFC. (A.R. 410.) In his RFC finding, however, the ALJ only limited plaintiff to lifting/carrying 20 pounds occasionally and ten pounds frequently, sitting/standing for six hours, occasionally bending or stooping, and avoiding working in cold temperatures. (A.R. 407.) The ALJ did not incorporate

10

1   Dr. Van Kirk's assessment that plaintiff should have a sit/stand option and should have no postural
2   activities.  Although the ALJ need not accept the full extent of Dr. Van Kirk's opinion, the ALJ may
3   not reject it, or significant parts of it, without giving specific and legitimate reasons for so doing.
4   Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding that the ALJ must explain why
5   "significant probative evidence has been rejected") (internal quotations and citations omitted).
6   Accordingly, the ALJ erred by failing to proffer any reason for overlooking, or declining to adopt,
7   a portion of Dr. Van Kirk's opinion.

8

9       Further, the Court does not find this error to be harmless, because when the VE was
10  presented with a hypothetical that included the Dr. Van Kirk's assessment that plaintiff should
11  have a sit/stand option and should have no postural activities, the VE responded that no jobs she
12  identified would be available.  (See A.R. 60-61; see also id. 438-39.)  Accordingly, on remand, the
13  ALJ must reassess the opinion of Dr. Van Kirk in accordance with the applicable legal standards.

14

15          **4.      The ALJ Erred In Relying On The State Agency Medical Consultants'**
16                   **Opinions In Determining Plaintiff's Physical RFC.**

17

18       In plaintiff's second claim, he contends that the ALJ erred in giving "substantial weight" to
19  the opinions of the non-examining state medical consultants, Dr. M. Nawar and Dr. A. Khong,
20  when determining plaintiff's physical RFC.  (Joint Stip. at  27-29.)

21

22       On April 21, 2010, after reviewing plaintiff's medical record, state reviewing medical
23  consultant M. Nawar opined that plaintiff could:  lift 20 pounds occasionally and ten pounds
24  frequently; stand, walk and/or sit about six hours in an eight-hour workday; have unlimited push
25  and/or pull abilities; occasionally climb, balance, stoop, kneel, crouch, and crawl; and avoid
26  extreme cold.  (A.R. 235-41.)  On September 7, 2010, state medical consultant A. Khong M.D.
27  affirmed Dr. Nawar's opinion.  (Id. 242-43.)

28

1    While the ALJ relies, in part, on the opinions of nonexamining state medical consultants,

2    their opinions alone cannot constitute substantial evidence, because they are not based on any

3    independent findings.  Further, although their opinions are substantially consistent with Dr. Van

4    Kirk's opinion, as discussed above, the ALJ failed to properly consider significant limitations

5    assessed by Dr. Van Kirk.  In addition, the state medical consultants' opinions predate many of

6    plaintiff's later medical records, including Dr. Nagelberg's opinion and Dr. Scheinberg's treatment

7    notes that longitudinally document plaintiff's physical impairments.  Andrews, 53 F.3d at 1041

8    (noting that where "a nontreating source's opinion contradicts that of the treating physician but

9    is not based on independent clinical findings, or rests on clinical findings also considered by the

10   treating physician, the opinion of the treating physician may be rejected only if the ALJ gives

11   specific, legitimate reasons for doings so that are based on substantial evidence of record").

12   Thus, the ALJ erred by relying on the state medical consultants' opinions when determining

13   plaintiff's exertional RFC.

14

15       **B.    The ALJ Failed To Properly Assess Plaintiff's Mental RFC.**

16

17   When determining plaintiff's non-exertional RFC, the ALJ credited "some" portions of the

18   opinion of David L. Friedman, M.D., Ph.D., the board certified psychiatrist who performed a

19   psychological examination of plaintiff in connection with plaintiff's workers' compensation claim.

20   (A.R. 410; *see also id.* 299-30.)   The ALJ determined that Dr. Friedman's assessed Global

21   Assessment of Function ("GAF") score of 52, which "indicates moderate symptoms, such as

22   occasional panic attacks or moderate difficulty in social, occupational or school functioning," was

23   in line with the RFC that plaintiff can perform simple, routine tasks.  (*Id.*)  However, the ALJ

24   rejected Dr. Friedman's opinion to the extent that it included other restrictions on plaintiff's

25   capacity to work.  (*See id.*)  The ALJ explained that there was no evidence of a continuous 12-

26   month period of a disabling mental impairment because plaintiff had only recently complained of

27   his depression and the evidence indicates that plaintiff "got better in 2012, then ceased all

28   treatment for a period of time, then resumed treatment and again improved."  (*Id.*)

12

1    In his March 3, 2011 report, Dr. Friedman detailed and summarized the history of plaintiff's

2    work injury, prior medical and psychiatric history, medical and non-medical records, results of

3    psychological testing, and mental status examination. (A.R. 299-30.)  Dr. Friedman diagnosed

4    plaintiff with depressive disorder not otherwise specific, pain disorder, and insomnia. (*Id.* 325-

5    24.)  Plaintiff was assessed a GAF score of 52.[6] (*Id.* 327.)  Dr. Friedman also opined that there

6    has been no period of psychiatric "temporary total disability," but plaintiff has been "temporarily

7    partially disabled in the range of slight to frequent moderate since early 2010 (approximately) to

8    the present." (*Id.*)  Further, plaintiff was "considered permanent and stationary/[maximum

9    medical improvement] from a psychiatric standpoint as of today's date, with psychiatric disability

10   consisting of a GAF of 52." (*Id.*)

11

12    The ALJ's decision to give Dr. Friedman's opinion only limited weight because there

13   purportedly is no evidence in the record that plaintiff continuously suffered a 12-month period of

14   depression is misguided. (A.R. 410.)  The record indicates that plaintiff may have been suffering

15   from depression as early as August 9, 2010, when his treating physician, Dr. Scheinberg, based

16   on plaintiff's apparent depression, recommended that plaintiff have a psychological consultation.

17   (*Id.* 316, 368.)   Further in September 30, 2010, Dr. Scheinberg noted that plaintiff "remain[ed]

18   quite anxious and depressed" and his request for a psychological consult was still pending. (*Id.*)

19   When Dr. Friedman examined plaintiff over six months later, as noted above, Dr. Friedman opined

20   that plaintiff had a depressive disorder, not otherwise specified (*id.* 324) and would require "future

21   psychiatric treatment." (A.R. 328.)  Additionally, Dr. Friedman noted that plaintiff's "permanent

22   psychiatric disability is due to the direct effect of the injury [on] 11/29/07." (*Id.*)  Thus, this

23   evidence suggests that plaintiff's reported/observed depression may have had a duration of

24   greater than 12 months.  Accordingly, the ALJ's assessment of the duration of plaintiff's mental

25

26    [6]  A GAF score is the clinician's judgment of the individual's overall level of functioning. It

27   is rated with respect only to psychological, social, and occupational functioning without regard
     STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th Ed. 2000). A GAF score of 51–60

28   shows moderate symptoms, such as those which would affect speech, or moderate difficulty in
     social, occupational, or school functioning. *Id.*

1   impairment was not a specific and legitimate reason supported by substantial evidence for

2   rejecting Dr. Friedman's opinion.

3

4       Further, the ALJ's conclusion that plaintiff "got better in 2012, then ceased all treatment

5   for a period of time, then resumed treatment and again improved" is not supported by substantial

6   evidence. (A.R. 409.)  Although plaintiff showed some improvement, the record demonstrates

7   that plaintiff's depression was still symptomatic.  (*See e.g., id. 542 -* 2/16/12, "feeling sad,

8   anxious, variable sleep and appetite" and "cries"; *id.* 540, 3/23/12 - "some improvement in mood

9   since on Cymbalta but still anxious and sad"; *id.* 539, 5/25/12 - "[o]verall mood is good" but "[s]till

10  sometimes feels upset when reflecting back on the accident"; *id.* 529, 9/20/13 - "feeling sad,"

11  "crying 4x/week," and "[n]ot able to focus and complete tasks"; *id.* 528, 10/24/13 - "mentally

12  better, but is very bothered" and "state of chronic pain makes him sad").  Finally, although the

13  ALJ determined that plaintiff would be limited to only "simple, repetitive tasks," the record is

14  devoid of any medical source's opinion assessing such a limitation.  Accordingly, it appears that

15  the ALJ's RFC assessment is based on nothing more than his own lay medical opinion, and it is

16  well-settled that an ALJ may not render a medical judgment and interject his own medical opinion,

17  nor may he substitute his own diagnosis for that of the claimant's physician.  *See* Tackett v. Apfel,

18  180 F.3d 1094, 1102 (9th Cir. 1999); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an

19  ALJ is forbidden from making his own medical assessment beyond that demonstrated by the

20  record).

21

22      Thus, the ALJ failed to give specific and legitimate reasons, supported by substantial

23  evidence, for rejecting Dr. Friedman's opinion.  On remand, the ALJ should reevaluate Dr.

24  Friedman's opinion and may need to secure a consultative psychological examination to properly

25  assess plaintiff's mental impairments.

26  \\

27  \\

28  \\

14

1    **II.**  **The ALJ Failed To Properly Evaluate The Credibility Of Plaintiff's Subjective**
2    **Symptom Testimony.**

3

4         Once a disability claimant produces objective medical evidence of an underlying impairment
5    that is reasonably likely to be the source of claimant's subjective symptoms, all subjective
6    testimony concerning the severity of the claimant's symptoms must be considered.  Moisa v.
7    Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.
8    1991); *see also* 20 C.F.R. §§ 404.1629(a), 416.929(a) (explaining how pain and other symptoms
9    are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence
10   thereof, he or she may only find an applicant not credible by making specific findings as to
11   credibility and stating clear and convincing reasons for each."  Robbins, 466 F.3d at 883.  The
12   factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation
13   for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's
14   testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and
15   (5) testimony from physicians and third parties concerning the nature, severity, and effect of the
16   symptoms of which the claimant complains.  *See* Thomas v. Barhart, 278 F.3d 947, 958–59 (9th
17   Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

18

19        Here, the ALJ concluded that "after careful consideration of the evidence, . . . [plaintiff]'s
20   medically determinable impairments could reasonably be expected to cause the alleged
21   symptoms." (A.R. 408.)  The ALJ cited no evidence of malingering by plaintiff but determined that
22   plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms
23   are not entirely credible." (*Id.*)  Accordingly, the ALJ's reasons for finding that plaintiff was not
24   credible with respect to her subjective symptom and pain testimony must be "clear and
25   convincing."

26

27        Plaintiff alleges that he is in pain all the time. (A.R. 48.)  His pain radiates from his lower
28   back into his legs. (*Id.* 51.)  He takes Vicodin and Naprosyn to relieve his pain. (*Id.* 49, 436-37.)

1    He has difficulty sitting and needs to stand up after 20 minutes of sitting.  (*Id.* 51.)  He also has

2    difficulty standing and needs to sit down after 20 minutes of standing.  (*Id.*)  Plaintiff also suffers

3    from depression and anxiety.  (*Id.* 51-52.)  He gets angry for no reason, cries uncontrollably, has

4    problems remembering, and avoids family and friends.  (*Id.* 53-54.)

5

6           The ALJ first rejected plaintiff's subjective symptom testimony based on his conclusion that

7    the objective medical evidence does not support plaintiff's allegations of disabling symptoms.

8    (A.R. 410.)  Specifically, the ALJ noted that plaintiff complained of "severe pain, but his treating

9    doctor noted that he has a pain-free range of motion and negative straight leg raising."  (*Id.*)

10   However, plaintiff's medical records is replete with evidence that upon examination, plaintiff

11   demonstrated tenderness and limited range of motion and/or was positive for straight leg raising.

12   (See, *e.g., id*. 194, 232, 333, 342, 376 523, 526.)    Thus, this was an insufficient reason to

13   discount plaintiff's credibility.

14

15          The ALJ's second reason for discrediting plaintiff was that the record showed that plaintiff

16   had not received "further surgeries" and the record did not show a "history of physical therapy,"

17   and thus plaintiff received conservative treatment.  (A.R. 410-11.)  However, the record reflects

18   that plaintiff had undergone physical therapy, but it had "not been particularly beneficial," and his

19   further requests for physical therapy were denied.   (*Id.* 333, 351); *see* Smolen, 80 F.3d at 1284

20   ("Where a claimant provides evidence of a good reason for not taking medication for her

21   symptoms, her symptom testimony cannot be rejected for not doing so." (citation omitted)).

22   Additionally, although plaintiff did not undergo any further surgeries, his treating physician Dr.

23   Scheinberg recommended that plaintiff have "access to orthopedic followup, to include but not

24   [be] limited to nonsteroidal anti-inflammatory medications and pain medications, [with] the

25   possibility of interventional pain management such as epidural injections and additional revision

26   surgery, with appropriate imaging studies."   (A.R. 50-51, 338.)

27

28          Finally, the ALJ rejected plaintiff's testimony, because plaintiff's "reported activities of daily

16

living reveal a person capable of performing some level of substantival gainful activities." (A.R. 411.)  Specifically, the ALJ noted that:

> [Plaintiff] previously testified that he watches television; can read and write in Spanish; will go to the store alone; can clean the house; cook and will go out with friends to socialize.  Moreover, he reported that even with taking pain medication that he is able to take walks, wash dishes, drive to the park and visit family.  *Now*, [plaintiff] is reporting that he is unable to perform any activities of daily living due to his pain and depression.  However, as evidenced above, [plaintiff] has participated in cleaning activities at his home, works on his car and plays with is grandchildren.  This sort of activity reveals a claimant who is not in continuous pain/depression, nor incapable of work.

(*Id.*)

To the extent the ALJ rejected plaintiff's credibility because plaintiff made inconsistent statements regarding his activities of daily living, the ALJ misstates the evidence.  At the second hearing, plaintiff did not testify that he is "unable to perform any activities of daily living," rather when asked by the ALJ how plaintiff spends his days, plaintiff responded "I have pain, but I try to do some activities." (A.R. 437.)  Nowhere does plaintiff testify that he is unable to perform *any* activities.  *See* Regennitter v. Comm'r, 166 F.3d 1294, 1297 (9th Cir. 1999) ("inaccurate characterization of the evidence" constitutes error); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  Further, an ALJ may rely on a claimant's daily activities to support an adverse credibility determination when those activities:  (1) "contradict [claimant's] other testimony"; or (2) "meet the threshold for transferable work skills."  Orn, 495 F.3d at 639.  As a result, a plaintiff's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen v. Chater, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996).  A claimant, however, need not be

17

1   "utterly incapacitated to be eligible for benefits[,] . . . and many home activities are not easily

2   transferable to what may be the more grueling environment of the workplace, where it might be

3   impossible to periodically rest or take medication." <u>Fair v. Bowen</u>, 885 F .2d 597, 603 (9th Cir.

4   1989) (internal citations omitted); <u>Gallant</u>, 753 F.2d at 1453 (an ability to engage in some physical

5   activities is not necessarily inconsistent with a finding of disability).

6

7          Here, there is no evidence plaintiff spends a "substantial part" of his day performing some

8   or all of the activities cited by the ALJ.  Moreover, the ALJ fails to specify how plaintiff's ability to

9   cook, clean, go places alone, take walks, drive, and visit family translates into the ability to

10  perform full-time work and renders plaintiff's testimony about his pain and symptoms unworthy

11  of belief.  <i>See</i> <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting that the "mere fact

12  that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or

13  limited walking for exercise, does not in any way detract from her credibility as to her overall

14  disability"); <u>Smolen</u>, 80 F.3d at 1283 n. 7 ("The Social Security Act does not require that claimants

15  be utterly incapacitated to be eligible for benefits, and many home activities may not be easily

16  transferable to a work environment where it might be impossible to rest periodically or take

17  medication .").  Accordingly, plaintiff's daily activities did not provide a clear and convincing reason

18  for discounting plaintiff's subjective complaints.

19

20         Based on the foregoing, the Court does not find the ALJ's reasons for discounting plaintiff's

21  credibility to be clear and convincing.  On remand, the ALJ must either credit plaintiff's subjective

22  symptom testimony or provide clear and convincing reasons supported by substantial evidence

23  for finding that plaintiff's testimony is not credible.

24

25  **III.    On Remand, The ALJ Must Review And Reconsider Plaintiff's Remaining Claims.**

26

27         Based on the foregoing, there are several matters that the ALJ needs to review and

28  reconsider on remand.  As a result, the ALJ's conclusion regarding plaintiff's RFC and plaintiff's

1  ability to do work may change.  Therefore, the Court does not reach plaintiff's remaining claims,

2  namely that the ALJ failed to properly address the Appeals Councils' specific directives and that

3  plaintiff's RFC assessment was inadequate.

4

5        On remand, the ALJ must correct the above-mentioned deficiencies and errors.  After doing

6  so, the ALJ may need to reassess plaintiff's RFC, in which case additional testimony from a

7  vocational expert likely will be needed to determine what work, if any, plaintiff can perform. The

8  ALJ should also carefully review and comply with each of the Appeals Council's directives on

9  remand.

10

11  **CONCLUSION**

12

13        Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the

14  Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with

15  this Memorandum Opinion and Order.

16

17        IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this

18  Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

19

20  **LET JUDGMENT BE ENTERED ACCORDINGLY**.

21

22  DATED: June 17, 2015

23                         *Margaret A. Nagle*

24                         MARGARET A. NAGLE

25                       UNITED STATES MAGISTRATE JUDGE

26

27

28